MARK CRAMER,

     Petitioner,

v.                              Case No. 5:16-cv-00489-Oc-02PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS, and FLORIDA
ATTORNEY GENERAL,

     Respondents.

_____/

# ORDER

Petitioner, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. Dkt. 1. At the Court's direction, Respondents responded to Petitioner's petition and filed relevant portions of the state court record. Dkts. 6, 7. Petitioner filed a reply in support of his petition. Dkt. 8. Upon review of Petitioner's reply, the Court directed Respondents to submit a supplemental response addressing Petitioner's argument that he was entitled to equitable tolling and that his petition was timely under 28 U.S.C. § 2244(d)(1)(B). Dkt. 11. The Court also allowed Petitioner to submit a supplemental reply. *Id.* Respondents filed their supplemental response (Dkt. 12), but Petitioner did not file a

supplemental reply and the time for doing so has expired. Thus, this matter is ripe for review.

The Court has reviewed the entire record. Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a). Upon consideration, the Court concludes that the petition is due to be dismissed as untimely.

## I.    BACKGROUND

Petitioner was charged with three counts of capital sexual battery on a victim less than 12 years of age (Counts I-III) and one count of lewd or lascivious molestation on a victim less than 12 years of age (Count IV). Dkt. 7-1 at 5–6. The alleged victim was his girlfriend's daughter. *Id.* at 283–84. Petitioner was tried by a jury and found guilty as charged on October 6, 2010. Dkt. 7-3 at 2–5. On October 21, 2010, he was sentenced to four consecutive life sentences. *Id.* at 7–17.

Petitioner (through counsel) filed a timely direct appeal to Florida's Fifth District Court of Appeal. *Id.* at 19-52. He raised various objections to the trial court proceedings, including an objection to the trial court's decision to admit so-called "*Williams* Rule" evidence of other similar acts of sexual misconduct (*id.*), including evidence that he also molested his stepdaughter (*see, e.g.*, Dkt. 7-2 at 78). In late April 2011, while his direct appeal was pending, Petitioner (through

counsel) filed a motion to correct sentencing error in the state trial court. Dkt. 7-4 at 24–29. On June 15, 2011, and as a result of that motion, Petitioner's sentence for Count IV was modified from life in prison running consecutively to the life sentences he received for Counts I-III to 15 years in prison running concurrently with his life sentences for Counts I-III. *Id.* at 2–10. In August 2011 (while the direct appeal was still pending), Petitioner (through counsel) filed a second motion to correct sentencing error. *Id.* at 12–17. On August 26, 2011, the state trial court re-sentenced Petitioner to 49 months in prison for Count IV (running concurrently with his sentences on Counts I-III). *Id.* at 40–52.

In May 2012, Petitioner (through counsel) filed a supplemental brief in his direct appeal in which he challenged a scrivener's error in his sentencing documents. *Id.* at 54–60. Specifically, he argued that the August 2011 amended judgment incorrectly designated his conviction for Count IV as a "life" felony under Fla. Stat. § 800.04(5), rather than a second-degree felony and that the amended judgment incorrectly omitted the phrase "*nunc pro tunc* to October 21, 2010" (the original sentencing date). *Id.* On December 28, 2012, the Fifth DCA affirmed Petitioner's convictions but remanded for correction of the scrivener's

error.  Dkt. 7-6 at 11–12; *see also Cramer v. State*, 103 So. 3d 4043 (Fla. 5th DCA 2012).  Mandate issued on January 22, 2013.  Dkt. 7-6 at 14.[1]

On February 28, 2014,[2] Petitioner filed a pro se motion to correct illegal sentence in the state trial court, arguing that the imposition of consecutive life sentences constituted cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.  *Id.* at 16–18.  On March 18, 2014, the court summarily denied the motion because Petitioner's argument was not cognizable in a motion to correct illegal sentence.  *Id.* at 20–21.

On April 1, 2014, Petitioner filed a pro se motion for postconviction relief in which he raised four claims of ineffective assistance of counsel and one claim of cumulative prejudice.  *Id.* at 23–30.  The state trial court summarily denied the motion in an order (with attachments) filed on May 12, 2014. *Id.* at 33–129.  The certificate of service on the order denying the motion indicates that it was mailed to Petitioner on May 13, 2014.  *Id.* at 40.

Nonetheless, it appears to be undisputed that, as of March 2015, Petitioner had not yet received a copy of the order.  Dkt. 8 at 5; *see also* Dkt. 7-6 at 159 (showing that Petitioner did not receive any legal mail in May, June, or July 2014).

---

[1] The scrivener's error was corrected on September 24, 2013, *nunc pro tunc* to August 26, 2011.  Dkt. 7-7 at 65–71.

[2] The remainder of the filing dates for Petitioner in this section are calculated pursuant to the mailbox rule.

According to Petitioner, he waited a "reasonable amount of time for an answer [to his motion for postconviction relief], almost 1 year" and then "filed a notice of inquiry in March of 2015." Dkt. 8 at 5. It appears that he made this "notice of inquiry" on or about March 16, 2015. *Id.*[3] In correspondence dated March 27, 2015, the clerk of the state trial court sent Petitioner a copy of the May 2014 order denying his motion for postconviction relief. Dkt. 12-1 at 4, 7. According to Petitioner, he then "immediately submitted an inmate request to the facility's mail room inquiring as to the legal mail logs between May 1, 2014 and June 30, 2014." Dkt. 8 at 5. That request form is dated April 14, 2015. Dkt. 7-6 at 159. In a response dated April 16, 2015, his correctional institution informed him that there was "no documentation showing that you received legal mail for the time frame of May 2014 through July 2014." *Id.*

On April 27, 2015, Petitioner filed a pro se petition for a belated appeal of the trial court's denial of his motion for postconviction relief. Dkt. 7-6 at 131–36. The Fifth DCA granted Petitioner's motion on June 12, 2015. Dkt. 7-7 at 6. Petitioner filed his pro se initial brief on September 15, 2015 (Dkt. 7-7 at 8–24), and the State responded (*id.* at 31–52). On June 14, 2016, the Fifth DCA per

---

[3] Petitioner does not provide the exact date, but his reply brief says that "42 days lapsed between [his] notice of inquiry to the circuit court . . . until he was able to prepare and file the petition for belated appeal on April 27, 2015." Dkt. 8 at 5. Forty-two days before April 27, 2015 was March 16, 2015.

curiam affirmed the trial court's denial of Petitioner's motion for postconviction relief. *Id.* at 54. Mandate issued on July 8, 2016. Dkt. 7-7 at 56.

Petitioner filed a motion for rehearing (*id.* at 58–61), but it was stricken as untimely on July 12, 2016 (*id.* at 63). Petitioner filed his federal habeas petition on July 19, 2016. Dkt. 1. His federal habeas petition raises four grounds of ineffective assistance of counsel, all four of which were raised in his state court motion for postconviction relief.

## II. <u>TIMELINESS</u>

Respondents argue that the petition is due to be dismissed because it is untimely under 28 U.S.C. § 2244(d). Dkt. 6. In his reply, Petitioner suggested that his petition was timely under § 2244(d)(1)(B). Dkt. 8. He also argued that he was entitled to equitable tolling. *Id.*[4] The Court discusses each of these points, below.

### 1. <u>28 U.S.C. § 2444(d)(1)(B) Does Not Apply.</u>

Federal habeas petitions are subject to a one-year statute of limitation that runs from the latest of a number of events, including (as relevant here): (1) "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"; and (2) "the date on which the impediment to filing an application created by State action in violation of the

---

[4] Petitioner's reply brief seems to assume that the analysis of equitable tolling is the same as the analysis under § 2244(d)(1)(B) and largely focuses on the equitable tolling analysis. Dkt. 8. Nonetheless, the analyses are distinct, and the Court discusses them separately.

Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. §§ 2244(d)(1)(A) and (B).[5]

In his reply brief, Petitioner suggested that the Court should apply § 2244(d)(1)(B) and find his petition timely. According to Petitioner, the state trial court "inadvertently made a mistake and did not serve Petitioner with the [order denying his motion for postconviction relief]," thereby preventing him from filing a timely notice of appeal. Dkt. 8 at 6. He argues that the failure to provide him with a copy of the order amounts to "an impediment by state action" under § 2244(d)(1)(B) and that the statute of limitation should not have begun to run until that impediment was removed, which was—according to him—when the Fifth DCA granted his petition for belated appeal. *Id.* at 4, 6.

The Court concludes that § 2244(d)(1)(B) is not applicable. Petitioner is correct that, if he was prevented from timely filing his federal habeas petition as a result of "illegal state action," the limitation period did not begin running until the state impediment was removed. *Arthur v. Allen*, 452 F.3d 1234, 1249 (11th Cir. 2006) (citation omitted), *modified on other grounds by* 459 F.3d 1310 (2006). But Petitioner's argument on this point is wholly conclusory. Notably, he offers no

---

[5] Section 2244 is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996. Because Petitioner filed his petition after that date, AEDPA and its statute of limitation apply. In addition, the parties do not contend that any of the other statutory triggers listed in § 2244(d)(1) apply. Thus, the Court does not discuss them.

evidence to support the conclusion that the state court failed to timely mail him the May 2014 order denying his motion for postconviction relief. Although it appears to be undisputed that Petitioner did not receive that order in 2014, the certificate of service indicates that it was mailed to Petitioner on May 13, 2014 and there is nothing in the record to suggest that the order was not mailed. That is, there is nothing to suggest that Petitioner failed to receive the order because of the state court's action—as opposed to, for example, an error by the postal service.

Regardless, even if there were evidence to support a finding that the state court failed to timely mail the order to Petitioner, Petitioner has failed to explain how that failure was a "violation of the Constitution or the laws of the United States." *See, e.g.*, *United States ex rel. Mueller v. Lemke*, 20 F. Supp. 3d 659, 666 (N.D. Ill. 2014) (rejecting application of § 2244(d)(1)(B) where state court clerk negligently provided petitioner's counsel with an incorrect date that led to the federal habeas petition being filed late because there was not "any evidence of violations of the Constitution or federal law"). On this point, the Fifth Circuit Court of Appeals has expressed "serious reservations" about whether a state's failure to notify a prisoner of a postconviction ruling "provides a basis for a statutory tolling claim rather than merely an equitable tolling claim." *Clarke v. Rader*, 721 F.3d 339, 343 (5th Cir. 2013) (citations).

But even assuming that the state court's apparent failure to timely mail a copy of the May 2014 order to Petitioner could be a state-created impediment that violated the Constitution or laws of the United States, Petitioner's appeal to § 2244(d)(1)(B) still fails. This is because § 2244(d)(1)(B) applies only if "the applicant was prevented from filing by such State action." Here, the state court did not prevent Petitioner from timely appealing the denial of his motion for postconviction relief and, thus, it did not prevent him from exhausting his state court remedies and filing his federal habeas petition. *See Critchley v. Thaler*, 586 F.3d 318, 319–20 (5th Cir. 2009) (concluding that the state court's apparent practice of mishandling and failing to file state habeas petitions constituted a state-created impediment under § 2244(d)(1)(B)).[6] As discussed in more detail, below, Petitioner had the ability to check on the status of his case. He simply failed to do so for almost a year. Had Petitioner exercised due diligence, he would have known about the denial of his motion for postconviction relief and could have timely

---

[6] In *Coulter v. Kelley*, 871 F.3d 612, 620 (8th Cir. 2017) (internal citations omitted), the Eighth Circuit also stated: "[W]e are skeptical that a court clerk's failure to send notice of a judgment to counsel is a state-created 'impediment' that 'prevented' [the petitioner] from filing a habeas petition. He was free to file a petition at any time. Equitable tolling is available to address delayed notice that leads a prisoner to believe that filing was not necessary or ripe, but § 2244(d)(1)(B) requires state action that actually *prevents* a filing. The section would apply, for instance, when a State prevents a prisoner from sending mail to the court, or perhaps when a prison law library refuses to furnish essential legal materials, but not when a State merely fails to provide a trial transcript." That opinion was later vacated, and the appeal was dismissed as moot after the State file a suggestion of death concerning the petitioner. *Coulter v. Kelley*, 876 F.3d 1112, 1112 (8th Cir. 2017). The court's analysis is, however, still instructive.

pursued an appeal and, later, his federal habeas petition. On these facts, it cannot be said that the alleged failure to mail the copy of the order "prevented" Petitioner from pursuing his federal habeas petition. *See Wood v. Spencer*, 487 F.3d 1, 7 (1st Cir. 2007) (rejecting reliance on § 2244(d)(1)(B) where the petitioner, "with the exercise of garden-variety diligence," could have learned about the alleged state-created impediment and "obliterated the adverse effects of the [state's] nondisclosure" because "[g]iven this circumstance, we cannot say that the state-created impediment 'prevented' [the petitioner], in any meaningful sense, from filing for federal habeas relief"). Thus, § 2244(d)(1)(B) does not apply.

      2.     The Petition is Untimely Under 28 U.S.C. § 2244(d)(1)(A).

Because § 2244(d)(1)(B) does not apply, the only other potential trigger for the statute of limitation in this case is § 2244(d)(1)(A)—"the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Under that section, however, the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ." *Id.* § 2244(d)(2). In their initial response, Respondents calculated Petitioner's filing deadline under § 2244(d)(1)(A) with tolling under § 2244(d)(2). Dkt. 6. In his reply, Petitioner

agreed that the petition was untimely under that provision. Dkt. 8 at 4 ("Petitioner understands why (d)(2) doesn't apply . . . .").

The Court agrees that the petition was not timely filed under § 2244(d)(1)(A). Petitioner's judgment and sentence were affirmed on direct appeal on December 28, 2012. The judgment and sentence became final 90 days later—on March 28, 2013—when Petitioner's time to seek review in the Supreme Court of the United States expired. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1274–75 (11th Cir. 2006) (per curiam) (concluding that the time to seek Supreme Court review ran from the date the DCA entered its judgment affirming petitioner's convictions, not the date it issued its mandate).[7] Pursuant to 28 U.S.C. § 2244(d)(1)(A), the one-year statute of limitation began running the next day. *See San Martin v. McNeil*, 633 F.3d 1257, 1266-67 (11th Cir. 2011). It ran for 337 days until Petitioner filed his third motion to correct illegal sentence on February 28, 2014. The order denying Petitioner's motion was filed on March 18, 2014. Petitioner did not appeal that ruling, and the statute of limitation would have begun to run again when his time for seeking appellate review expired 30 days later—that

---

[7] Respondents argue that the correction of the scrivener's error in Petitioner's sentence (which occurred on September 24, 2013) did not result in a new final judgment for purposes of § 2244(d)(1)(A). Dkt. 6 at 7 & n.6. Petitioner does not dispute this contention and has not cited any cases to the contrary. Moreover, in similar situations, courts have found that there is not a new judgment for purposes of AEDPA's statute of limitation when a scrivener's error is corrected. *See, e.g., Bishop v. Sec'y, Fla. Dep't of Corr.*, No. 3:13cv118/MCR/EMT, 2013 WL 5596776, at *4 (N.D. Fla. Oct. 11, 2013) (collecting cases).

is, on April 16, 2014.  *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (AEDPA statute of limitation was tolled under § 2244(d)(2) during time in which petitioner could have sought appeal of trial court's denial of his motion to correct sentence, even though he did not seek appellate review of the denial).

Before the statute of limitation began running again, though, Petitioner filed his motion for postconviction relief.  That motion (filed on April 1, 2014) was denied on May 12, 2014.  Petitioner did not appeal that ruling, so the statute of limitation began to run again when his time for seeking appellate review expired 30 days later—that is, on June 11, 2014.  *See  Hollinger v. Sec'y, Dep't of Corr.*, 334 F. App'x 302, 304 n.3 (11th Cir. 2009) (AEDPA statute of limitation was tolled under § 2244(d)(2) during time in which petitioner could have sought appeal of trial court's denial of motion for postconviction relief, even if petitioner did not file an appeal).[8]  Because 337 days had already run off the statute of limitation, Petitioner's deadline to file a federal habeas petition expired 28 days later—that is, on July 9, 2014.[9]  Petitioner did not file his federal habeas petition until July 19,

---

[8] In this Order, unpublished decisions of the Eleventh Circuit are cited as persuasive authority.

[9] Petitioner's petition for belated appeal—filed on April 27, 2015—could not further toll the statute of limitation because the statute of limitation had already expired at that point. *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003).

2016—long after that deadline expired. Thus, his federal petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

### 3. Equitable Tolling is Not Warranted.

Petitioner argues, however, that equitable tolling should apply because he did not receive a copy of the order denying his motion for postconviction relief until late March or early April 2015, arguing that "he is entitled to equitable tolling from June 11, 2014, when time expired for filing timely notice of appeal from the trial court's summary denial of his Rule 3.850 motion and to the time the belated appeal was granted on June 12, 2015, totaling approximately 364 days." Dkt. 8 at 4. He argues that he "pursued his rights diligently" because he "wait[ed] a reasonable amount of time for an answer, almost 1 year," filed an inquiry with the state trial court, and "immediately" after receiving a response, "submitted an inmate request to the facility's mail room inquiring as to the legal mail logs . . . ." Dkt. 8 at 5. He suggests that "[o]nly 42 days lapsed from Petitioner's March 2015 notice of inquiry to the circuit court" until the filing of his petition for belated appeal. *Id.*

A habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation and citation omitted). The petitioner

bears the burden of proving circumstances that justify the application of equitable tolling. *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1209 (11th Cir. 2014) (citation omitted). A petitioner "must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue." *Id.* (internal quotation and citation omitted). The allegations supporting equitable tolling must be specific and not conclusory. *Id.* (citation omitted). Because equitable tolling is an "extraordinary remedy," it is "limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (internal quotation and citation omitted).

On review, the Court concludes that Petitioner has not shown entitlement to equitable tolling. A petitioner's failure to receive a copy of a state court's order on a motion for postconviction relief may constitute an extraordinary circumstance that justifies equitable tolling, but the petitioner must still show that he exercised diligence in pursuing his remedies. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal quotations and citation omitted).

So, for example, in *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002) (per curiam), the petitioner filed a state application for habeas corpus in the state trial court. After that petition was denied, he filed an application for discretionary review with the Supreme Court of Georgia. He asked the clerk of court when he

could expect a ruling and was told that he would be notified as soon as a decision was issued. *Id.* at 710. The Supreme Court of Georgia denied the application but inadvertently sent the order to the wrong person. Sixteen months later, the petitioner inquired about the status of his case. Two months after he made the inquiry, he was told that his application had been denied some eighteen months earlier. *Id.* The Eleventh Circuit found that the petitioner exercised reasonable diligence and was entitled to equitable tolling because he "was assured that the court would contact him" and "demonstrated diligence in pursuing information when it did not do so." *Id.* at 711. *See also Johnson v. Sec'y, DOC*, No. 3:14-cv-1351-J-39JBT, 2017 WL 2672551, at *4–5 (M.D. Fla. June 21, 2017) (finding that the petitioner exercised reasonable diligence in attempting to ascertain status of his motion for postconviction relief where he: (1) filed a motion asking the court to rule approximately two months after the State filed its response to his motion (making the motion ripe); (2) after the court failed to respond for two months, filed a petition for writ of mandamus with the state appellate court; (3) contacted prison mail room staff seeking information about his legal mail log the same day he learned that the state trial court had denied his motion for postconviction relief; and (4) filed a motion for belated appeal less than two weeks after learning about the denial of the motion for postconviction relief).

The Eleventh Circuit has noted, however, "that not in every case will a prisoner be entitled to equitable tolling until he receives notice." *Knight*, 292 F.3d at 711. Instead, "[e]ach case turns on its own facts." *Id.* In *Pollock v. Secretary, Department of Corrections*, 664 F. App'x 770 (11th Cir. 2016) (per curiam), the petitioner appealed from the state trial court's denial of his motion for postconviction relief, but the state appellate court did not send him notice of its decision affirming the state trial court. *Id.* at 771. Seventeen months after he filed the appeal, he filed a notice of inquiry with the appellate court and learned that the appellate court had affirmed the trial court. *Id.*

The Eleventh Circuit found that the district court did not clearly err in finding that the petitioner failed to exercise due diligence and, thus, was not entitled to equitable tolling. *Id.* at 773. It reasoned:

> [The petitioner's] single inquiry is insufficient to show diligence . . . . [T]his case is . . . distinguishable from *Knight* because, first, [the petitioner] waited longer to inquire about the status of his motion than the appellant in *Knight*, and second, [the petitioner received no personal assurances from the court that it would promptly inform him of a decision, but instead relied on generally applicable state administrative rules that mandate notification . . . . [The petitioner] has not provided evidence to counter the district court's findings, nor has he provided an explanation for his lengthy delay in inquiring other than his reliance on the court's general rules regarding notification. Additionally, the state court's quick response to his inquiry supports the circumstances were not out of [the petitioner's control], if only he had inquired sooner.

*Id.* at 773. *See also Logreira v. Sec'y for the Dep't of Corr.*, 161 F. App'x 902, 904 (11th Cir. 2006) (per curiam) (holding that district court did not commit clear

error in holding that petitioner failed to exercise due diligence where he inquired about the status of his state habeas petition six months after it became ripe, but received no personal assurance that he would be contacted at the conclusion of his case, did nothing more than mail letters to the court, and waited six months to file his federal habeas petition after learning that his state petition had been denied).

Petitioner's case is more like *Pollock* than *Knight*. Like the petitioner in *Pollock*, Petitioner waited a substantial period of time (almost a year) to make any inquiries about the status of his postconviction motion. Notably, the state court ruled on all the other motions he filed after his conviction expeditiously (with the longest decision time being less than two months), so he had no apparent reason to believe that it would take the state court nearly a year to rule. In his petition for belated appeal, Petitioner also noted that, in early March 2015, he "began to inquire whether or not the Courts had received his motion" by "request[ing] a copy of his case docket from the law library." Dkt. 7-6 at 134. Thus, Petitioner had the ability to check on the status of his case but simply failed to do so for almost a year. He offers no explanation for this failure but simply claims that the wait was "reasonable." Dkt. 8 at 5. Unlike the petitioner in *Knight*, he did not have a personal assurance from a court official that he would be notified when his case was resolved. The state court also acted quickly when Petitioner finally did inquire, which further supports the conclusion that the circumstances that led to the

late federal habeas petition were not beyond Petitioner's control, if only he had inquired sooner. Petitioner's failure to inquire as to the status of his case for nearly a year reflects a lack of due diligence, and, as in *Pollock*, equitable tolling is not warranted.

This conclusion is further underscored by Petitioner's actions after he learned that the state court had denied his motion for postconviction relief. *See Logreira v. Sec'y Dep't of Corr.*, No. 1:04-cv-020580, Dkt. 17-1 at 5 (S.D. Fla. June 13, 2005), *aff'd*, 161 F. App'x 902 (11th Cir. 2006) (considering delay after petitioner received copy of order that had not previously been mailed to him in analyzing entitlement to equitable tolling). Importantly, Petitioner had only 28 days remaining on his federal habeas statute of limitation when he filed his state court motion for postconviction relief. He would have been required to act quickly after exhausting his state court remedies even if he had timely received a copy of the order denying his motion for postconviction relief. The time crunch was not a circumstance beyond his control because he allowed 337 days to run off his federal habeas statute of limitation before filing a motion for postconviction relief. *See, e.g.*, *Tinker v. Moore*, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001) ("We remind petitioners that . . . care must be taken to assure that sufficient time remains within the federal statutory period to file the federal petition . . . . [S]hould a petitioner wait to file his state petition until only a week remains before the expiration of the

one year federal imitation period, he or she will only have a week left to file a federal petition before the federal limitation period has expired.").

Despite this, there are unexplained gaps in the record. For example, the notice sending Petitioner a copy of the order denying his motion for postconviction relief is dated March 27, 2015 (Dkt. 12-1 at 7), but Petitioner did not submit a request for his mail logs until April 14, 2015 (Dkt. 7-6 at 159). Even generously allowing a week for mailing,[10] this means Petitioner took at least 10 days to fill out a simple form. He has not explained why this delay was reasonable. *See Johnson*, 2017 WL 2672551, at *4-5 (finding due diligence in part because petitioner requested mail logs the same day he found out about the state court's denial of his motion for postconviction relief). In addition, the notice informing Petitioner that prison mail logs showed no legal mail for the relevant time period was dated April 16, 2015. Dkt. 7-6 at 159. But Petitioner did not file his petition for belated appeal until April 27, 2015. He has not explained why it took him 11 days to file the 5-page petition or why he could not have started working on the petition in late March, when he found out that his motion for postconviction relief had been denied in May 2014. *See Johnson*, 2017 WL 2672551, at *4-5 (petitioner filed for belated appeal less than two weeks after learning about the denial of his motion for

---

[10] Petitioner bears the burden of proving his entitlement to equitable tolling, and he has not submitted any evidence suggesting that it took more than a week for the notice to reach him.

postconviction relief, including time required to request legal mail log).  Finally,

Petitioner waited 11 days to file his federal habeas petition after the mandate issued

on his appeal but has not explained why it was reasonable for him to take that

much time to file his petition.  Notably, all of the grounds raised in Petitioner's

federal habeas petition were raised in his state court motion for postconviction

relief, and large portions of his federal habeas petition are word-for-word identical

to his state court motion for postconviction relief.  When considered in connection

with Petitioner's failure to inquire about the status of his case for nearly a year,

these facts further support the Court's finding that Petitioner failed to act with due

diligence.

   The Court recognizes that Petitioner was not required to exercise "maximum

feasible diligence," but he was required to be reasonably diligent.  And he bears

the burden of presenting evidence to make a showing of extraordinary

circumstances that were "both beyond his control and unavoidable even with due

diligence."  *Howell v. Crosby*, 415 F.3d 1250, 1251 (11th Cir. 2005) (internal

quotation and citation omitted).  He has failed to do so.  Instead, taken together, the

facts indicate that Petitioner failed to act with reasonable diligence in pursuing his

federal habeas remedies. Accordingly, equitable tolling is not warranted, and his petition was not timely filed under 28 U.S.C. § 2244(d)(1)(A).[11]

In summary, § 2244(d)(1)(B) does not apply. Petitioner's federal habeas petition was untimely under § 2244(d)(1)(A), and equitable tolling is not warranted. Petitioner has not invoked any other reason to toll the statute of limitation, such as a claim of actual innocence.[12] In any event, even if Mr. Cramer's petition were timely, the claims are denied on the merits.

## III.  MERITS

Petitioner raises four grounds of ineffective assistance of counsel. Respondent argues that counsel was not ineffective on all four grounds and that

---

[11] Petitioner did not explicitly request a hearing on equitable tolling, but the Court finds that one is not warranted. The decision whether to hold an evidentiary hearing on equitable tolling is committed to the Court's sound discretion. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1292 (11th Cir. 2002), *overruling on other grounds recognized by Jones v. Sec'y, Dep't of Corr.*, 906 F.3d 1339, 1351 (11th Cir. 2018). While an evidentiary hearing may be necessary where material facts are in dispute, it is not required where no basis exists to believe that further inquiry would help the petitioner prove entitlement to equitable tolling. *Id.*; *San Martin*, 633 F.3d at 1271-72. Here, Petitioner has offered no allegations or supporting evidence suggesting that further inquiry by the Court would help him prove entitlement to equitable tolling.

[12] On this point, it appears that Petitioner could not make out a claim of actual innocence, which requires Petitioner to come forward with new evidence and show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citations omitted). Petitioner has not come forward with any new evidence. In addition, the record reflects that the victim—who thought Petitioner was her biological father until she as about 13 years old (*see* Dkt. 7-1 at 285)—gave detailed testimony about the alleged abuse. The jury could have chosen to believe that testimony. In addition, the victim made two "controlled calls" to Petitioner, which were played at the trial. It appears that the victim relayed her version of events to Petitioner and that he did not refute it, but instead said that he was sorry and that he was sick at the time of the abuse, and also that he did not know why he molested her. *See, e.g.*, Dkt. 7-2 at 168–69; *see also id.* at 170; Dkt. 7-3 at 74–75.

part of the third ground is unexhausted, procedurally defaulted, and procedurally barred. The Court finds a hearing unnecessary. *See Turner v. Crosby*, 339 F.3d 1247, 1274–75 (11th Cir. 2003).

1. Ineffective Assistance of Counsel Claims

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland's* deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted). Here, Petitioner fails to establish that the postconviction court's determination under Strickland was unreasonable.

2. <u>Ground I: Bill of Particulars to Narrow the Timeframe</u>

Petitioner complains that the date ranges for the conduct charged (January 1, 1996 to September 22, 2000 for three counts of capital sexual battery and one count of lewd and lascivious molestation of child less than twelve) were long enough to undermine "the defense's preparation and also undermined unanimity of the verdict." Dkt. 1 at 4. Trial counsel did not move for a bill of particulars. The post-conviction court rested its denial of the claim 1) on the absence of prejudice and 2) that confidence in the fairness and reliability of the proceedings was not compromised. Dkt. 7-6 at 36–38.

"The purpose of a bill of particulars is merely to give the defendant notice of the particular acts relied upon by the state to establish the crime charged, that the defendant may be fully advised of the nature and cause of the accusation against him, and that he may have an opportunity to prepare his defense." *Middleton v. State*, 76 So. 785, 787 (1917). Florida Rule of Criminal Procedure 3.140(n) provides the mechanism to obtain a statement of particulars if the dates and times are too indefinite for counsel to prepare a defense. The information or indictment must allege the commission of a particular offense "as definitely as possible." *Howlett v. State*, 260 So. 2d 878, 880 (Fla. 4th DCA 1972) (citing applicable Florida rule of criminal procedure [now 3.140(n)]). For unlawful sexual acts on a minor, however, the state may charge "in a manner not permitted in other types of

criminal cases, expanding time periods for the commission of offenses and grouping types of offenses together[.]" *Whittingham v. State*, 974 So. 2d 616, 618–19 (Fla. 4th DCA 2008).

The post-conviction court correctly stated Florida law that a defendant is not entitled to know an exact date when that date is unknown. Dkt. 7-6 at 36–38. Here, Petitioner does not state with any specificity how counsel's failure to request a bill of particulars prevented him from presenting a defense, nor the substance of any defense.

His second point discusses the risk of a non-unanimous verdict— that "one juror could have believed that [Mr. Cramer] committed a particular act at a particular time while another juror may have believed that he committed an entirely different type of act at an entirely different time." Dkts. 1 at 4; 7-6 at 24. In child sexual abuse cases, Florida law permits the state to charge by grouping multiple offenses together in a single count. *Whittingham v State*, 974 So. 2d at 618–19. This practice "actually lessens the potential penalty to the defendant" because there is less chance of potential consecutive sentencing on single offenses. *Id.* at 619.

The Court finds both that the postconviction court's determination that there was no prejudice was not unreasonable and that there was no deficient performance.

3. Ground II: Petitioner did not Testify at Trial

According to Petitioner, trial counsel misadvised him to not testify at trial. He alleges that he would have testified he did not commit any acts of sexual abuse on the child victim. Dkt. 1 at 6. He would have testified that the victim's mother and the victim made up the story because there was "growing animosity between himself and the victim's mother" about "property and his son, Coty Cramer." *Id*. The victim was angry with him because he was strict in making her complete her chores. *Id*. He also claims that "Miss Hodock, the *Williams* Rule witness" lied because she despised him for cheating on her mother. *Id*.

The post-conviction court found Petitioner voluntarily refrained from testifying at his trial. Dkt. 7-6 at 37–38. Citing the trial transcript, the court noted that Petitioner would have been questioned about the controlled call in which he did not deny the victim's allegations of sexual abuse. *Id.* His purported testimony would contradict the victim's detailed testimony, another stepdaughter's testimony about abuse perpetrated by Petitioner, and his own response in the controlled calls, which is inconsistent with a defense of innocence. *Id*.

"[T]he essence of an ineffective assistance of counsel claim that counsel violated a defendant's right to testify is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify on his own behalf." *U.S. v. Teague*, 935 F.2d 1525, 1534 (11th Cir. 1992). Petitioner after

being informed, and while under oath at trial, stated: "I decided not to. My decision not to testify." Dkt. 7-1 at 258–61. Petitioner made the informed decision not to testify and did not object. Had he testified, his veracity could have been impugned, thereby making a stronger case for the prosecution.

The post-conviction court's analysis is a correct and reasonable interpretation of the *Strickland* standard applied to the failure to testify. Not only does counsel's performance meet the test, but Petitioner has not shown a reasonable probability that the outcome of the trial would have been different had he testified. The state argued in closing that the victim had no reason to lie when she considered Petitioner her father, that property issue occurred two years before the abuse was reported, and the victim would not have fabricated a claim when it was obvious at the trial the problems she had testifying. Dkt. 7-2 at 199–200, 204–05, 207. In closing the jury was also reminded that in the controlled call, Petitioner never denied the allegations of abuse nor told the victim she was fabricating her story based on the property transfer years before. Dkt. 7-2 204–05, 207.

Because Petitioner does not demonstrate that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground II.

4. <u>Ground III: Speedy Trial</u>

Petitioner claims counsel failed to explain the pros and cons of waiving speedy trial and therefore he did not consent to the waiver. Dkt. 1 at 8–9. He alleges that as a result of the waiver, the state had more time to find a *Williams* rule witness. *Id*. Petitioner raised only the Florida speedy trial rule before the state court. For the first time in his petition, he invokes federal constitutional error based on the waiver. That federal constitutional claim is therefore unexhausted, procedurally defaulted, and procedurally barred. Petitioner has not shown cause and actual prejudice, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The post-conviction court summarily denied the claim based on the conclusory allegation that the state would not have been prepared for trial and the charges would have been dismissed had Petitioner invoked his right to speedy trial. Under Florida law, ineffective assistance founded on the failure to seek discharge based on a speedy trial violation is rare. *Cf. Wells v. State*, 881 So. 2d 54, 55 (Fla. 4th DCA 2004) (finding sufficient prejudice alleged because state may not have been entitled to recapture window because defendant was not notified or re-arrested on charges). Moreover, whether a state trial court violated Florida's speedy trial rules does not present a federal claim. *Franklin v. Florida*, No. 8:08-cv-1347-T-30TGW, 2009 WL 2386108, at *5–6 (M.D. Fla. July 31, 2009). A

state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because there is no question of a constitutional nature. *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

Based on the bare-boned allegations, Petitioner cannot show that the state would not have taken advantage of the 15-day recapture period under Rule 3.191 of the Florida Rules of Criminal Procedure. In short, he does not show that the outcome of the trial would have been different. The trial court reasonably applied the *Strickland* standard.

5. Ground IV: Improper Prosecutorial Comments

Petitioner alleges that counsel should have objected to the following comment by the prosecutor in closing argument:

> It has nothing to do with property being transferred years before this was reported. It has nothing to do with anybody being angry with him. There's been no evidence to suggest a reason for [the victim] to come in here and tell perfect strangers that her step-father sexually abused her for years, except for the fact that it happened.

Dkt. 1 at 10–11. He argues that this is an improper comment on his right to remain silent and improperly shifted the burden of proof to the defendant to disprove the witness's veracity. *Id*.

The post-conviction court summarily denied this ground and noted that the prosecutor "summarized the Defendant's response to the controlled call made by the sheriff in which the victim specifically asked the Defendant as to why he

molested her." Dkt. 7-6 at 39. The court found the summarization did not amount to an improper comment on the right to remain silent or to an improper burden-shifting.

Under Florida law the state is given wide berth in making comments in closing in response to a defendant's attack on the victim's credibility. *Jackson v. State*, 703 So. 2d 515 (Fla. 3d DCA 1997). The comment must be so prejudicial as to vitiate the entire trial. *King v. State*, 623 So. 2d 486, 488 (Fla. 1993). Otherwise, the comment is harmless.

In the habeas context, two questions are asked to determine whether relief should be granted: "First, we consider whether the prosecutor's arguments were improper. Second, we consider whether any arguments found improper were so prejudicial as to render the trial fundamentally unfair." *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987), *cert. denied*, 485 U.S. 929 (1988). Where the prosecutor accurately summarizes evidence, even though it may bolster a victim's credibility, the comment is not improper without more.

Here the state was simply responding to the defense's attack on the victim's credibility by suggesting the victim had no reason to lie. Counsel is not ineffective for failing to recognize and protect a meritless claim. *See Ballard v. McNeil*, 785 F. Supp. 2d 1299, 1325 (N.D. Fla. 2011) (holding that prosecutor's comments regarding the family situation were responsive to defense counsel's arguments and

presented reasons why evidence suggested that the victim's testimony was credible).

Petitioner has failed to demonstrate prejudice, even assuming performance was deficient. The victim's testimony, similar fact testimony, Petitioner's reaction during the controlled calls begging for forgiveness and explaining he was sick, as opposed to expressing shock and denial, all support a finding of confidence in the outcome of the trial. Based on the evidence at trial, Petitioner has not shown by clear and convincing evidence that the state courts' factual findings were unreasonable or that the state court's findings were an unreasonable application of clearly established federal law.

Accordingly, Cramer's petition for writ of habeas corpus (Dkt. 1) is denied. The Clerk is directed to enter judgment against Cramer and close the case.

## IV.  DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Cramer must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.

*See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Cramer is not entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Cramer must obtain permission from the circuit court to appeal *in forma pauperis*.

## V.    CONCLUSION

For the reasons stated above, the Court finds that Petitioner's petition for writ of habeas corpus (Dkt. 1) is untimely, without merit, and must be denied. The Court dismisses this action with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on October 2, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se